Lawrence RAYNER and Sally Rayner, Plaintiffs-Respondents,†

v.

REEVES CUSTOM BUILDERS, INC., Arthur J. Reeves and Beth E. Reeves, Defendants-Appellants.

Court of Appeals

*No. 03–3235. Submitted on briefs September 9, 2004.—Decided November 10, 2004.*

## 2004 WI App 231

(Also reported in 691 N.W.2d 705.)

† Petition to review denied 4-6-2005.

On behalf of the defendants-appellants, the cause was submitted on the briefs of *John M. Murphy* of *Leece & Phillips, S.C.* of Elkhorn.

On behalf of the plaintiffs-respondents, the cause was submitted on the brief of *David C. Williams* of *Harrison, Williams, McDonell, Swatek & Buttram, LLP* of Lake Geneva.

Before Anderson, P.J., Brown and Nettesheim, JJ.

¶ 1. BROWN, J.   This case involves an issue of first impression, namely, whether consumer protection regulations pierce the corporate veil and allow for personal liability against individual wrongdoers. We hold that

they do if it is shown that the individual—rather than the entity—is responsible for devising the unfair method of selling home improvements. The purpose of these laws is to protect homeowners from unfair dealings and practices in areas such as the home improvement arena. The law means, by its clear terms, to expose to liability any person or entity responsible for plotting an unfair method of interaction. In this case, it was the person and not the entity. We affirm the trial court's denial of the individual's motion to dismiss the case on the basis that only the alleged wrongdoer's alter ego, a corporation, may be sued. We do, however, allow dismissal as to his wife, because there is no evidence of her involvement other than being an officer of the corporation.

¶ 2. On July 16,[1] 1999, Lawrence and Sally Rayner entered into a contract for home improvements to their Lake Geneva residence. These improvements consisted of an addition to the home as well as remodeling, at a stated cost of $594,390. The contract is entitled "AGREEMENT BETWEEN OWNER and CONTRACTOR" and designates the Rayners as "Owners."

¶ 3. The record is less clear as to the identity of the "Contractor." On the one hand, the first page of the Agreement designates Reeves Custom Builders, Inc. as the contractor. Moreover, a cost estimate sheet prepared two weeks prior to the contract date appears on a Reeves Custom Builders, Inc. letterhead. The person the Rayners dealt with in negotiating and attempting to complete the contract was Arthur J. Reeves, who was

---

[1] The date on the contract is July 16, but the complaint is less specific, placing the contracting date at "[o]n or about July 15, 1999."

the president of Reeves Custom Builders, Inc. at all times relevant to these proceedings.

¶ 4. On the other hand, other evidence in the record suggests that Arthur in his individual capacity was the contractor. The signature page of the Agreement does not reference the corporation. Under "Contractor," the signature line contains the signature "Arthur J. Reeves." The line directly beneath for "Printed Name and Title" also simply names "Arthur J. Reeves," with no reference to Reeves Custom Builders, Inc. or to Arthur's position as president. An addendum to the Agreement also contains Arthur's signature without reference to the corporation or to Arthur in his official capacity as president thereof.

¶ 5. In any event, the Rayners became unhappy with the work. On July 27, 2001, they filed a complaint, which they later amended on February 25, 2002. The amended complaint named as defendants Arthur, Reeves Custom Builders, Inc., and Arthur's wife, Beth E. Reeves, in her capacity as a shareholder, officer, director, and employee of defendant Reeves Custom Builders, Inc. The record reflects that Beth's duties at the time included typing certain documents and some of the bookkeeping responsibilities.

¶ 6. The complaint stated two causes of action. The first alleged violation of various provisions of Wis. Admin. Code ch. ATCP 110 (2004)[2], entitled, "HOME IMPROVEMENT PRACTICES," which the Wisconsin Department of Agriculture, Trade and Consumer Protection enacted pursuant to Wis. Stat. § 100.20(2)

---

[2] All references to the Wisconsin Administrative Code are to the 2004 version unless noted otherwise.

(2001–02).[3] *See* Wis. Admin. Code ch. ATCP 110 note. The second cause of action was for breach of contract. It stated that the Wis. Admin. Code ch. ATCP 110 violations constituted such a breach and further alleged that defendant Reeves Custom Builders, Inc. failed to complete the contract for the contract price.

¶ 7.   On March 17, 2003, Arthur and Beth filed a motion to dismiss them personally from the action, contending that the amended complaint failed to state a claim against them individually. The circuit court heard argument on this matter on November 12. The Rayners contended that the Reeveses were personally liable under the definition of "seller" in Wis. Admin. Code § ATCP 110.01(5) as "person[s] engaged in the business of making or selling home improvements and includes corporations, partnerships, associations and any other form of business organization or entity, and their officers, representatives, agents and employees." They maintained that because Arthur and Beth admitted they were officers of the corporation, they were automatically liable under that definition, which pierces the corporate veil by its very terms.

¶ 8.   The Reeveses countered that the definition merely intended to make clear that agency principles applied to remodeling contractors. To interpret it otherwise, they argued, "would totally abrogate centuries of corporation limited liability law," which provides for limited liability for individual corporate actors. They also disputed that the legislature would have intended to give plaintiffs carte blanche to sue even mere employees.

---

[3] All references to the Wisconsin Statutes are to the 2001–02 version unless noted otherwise.

¶ 9. The circuit court denied the motion. "The statute says what it says, and . . . I don't feel comfortable in granting summary judgment when it says they are sellers." The Reeveses petitioned for leave to appeal a nonfinal order, and we granted their petition.

¶ 10. On appeal, the Reeveses advance the same construction of Wis. ADMIN. CODE § ATCP 110.01(5) they proposed below, one which interprets "and their officers, representatives, agents and employees" to simply impose vicarious liability on employers for the acts of these individuals. In support of their preferred construction, they urge us to compare this case to *Alberte v. Anew Health Care Services, Inc.*, 2000 WI 7, 232 Wis. 2d 587, 605 N.W.2d 515, in which our supreme court held that the Americans with Disabilities Act, 42 U.S.C. §§ 12101–12213 (1994)[4] did not contemplate holding an employer's agent personally liable for violations of the Act. *Alberte*, 232 Wis. 2d 587, ¶¶ 1, 6. The ADA prohibits "covered entities" from discriminating against the disabled. *See id.*, ¶ 8; ADA, 42 U.S.C. § 12112(a). A "covered entity" includes "employers," defined to include persons "engaged in an industry affecting commerce who [have] 15 or more employees . . . *and any agent of such person[s]*." *See Alberte*, 232 Wis. 2d 587, ¶ 8 (emphasis added in opinion); ADA, 42 U.S.C. § 12111(2), (5)(A).

¶ 11. Reviewing the issue de novo, *see Hughes v. Chrysler Motors Corp.*, 197 Wis. 2d 973, 978, 542 N.W.2d 148 (1996) (statutory construction presents a question of law that mandates our de novo review), we reject the Reeveses' comparison and conclude that Wis. ADMIN.

---

[4] All further references to the United States Code are to the 2004 version unless otherwise noted.

CODE § ATCP 110.01(5) does provide for liability for individual wrongdoers. Our supreme court decided *Alberte* in the wake of several federal circuit court cases, to which it looked for guidance. These many authorities included *United States E.E.O.C. v. AIC Security Investigations, Ltd.*, 55 F.3d 1276 (7th Cir. 1995), which cut right to the heart of the ADA's rationale for imposing liability on only employers in rejecting the appellants' "Chicken Little-esque" contention that "through the loophole of no individual liability will pour a flood of unpunished and undeterrable discrimination." *Id.* at 1282. The Seventh Circuit stated, "The employing entity is still liable, and that entity and its managers have the proper incentives to adequately discipline wayward employees, as well as to instruct and train employees to avoid actions that might impose liability." *Id.* (citation omitted.)[5]

¶ 12.    The hiring, firing, promotion, demotion, and discipline of employees are internal personnel decisions, over which employers can exercise administrative oversight. They can control their workplace environments by choosing supervisors, promulgating and enforcing guidelines, and training their personnel about workplace-appropriate behavior. *See* Kristi Lappe, Comment, "*I Just Work Here": Precluding Supervisors' Individual Liability Under the Federal Anti-*

---

[5] *United States E.E.O.C. v. AIC Security Investigations, Ltd.*, 55 F.3d 1276 (7th Cir. 1995), cites to *Miller v. Maxwell's International Inc.*, 991 F.2d 583, 588 (9th Cir. 1993), which uses a similar rationale in refusing to impose individual liability on employees who violate Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e-2000e-17 (1988), and the Age Discrimination in Employment Act of 1967, 29 U.S.C. §§ 621–634 (1988). Both Title VII and the ADEA define "employer" substantially identically to the ADA definition. *Alberte*, 232 Wis. 2d 587, ¶ 11.

*discrimination Statutes and the Arizona Civil Rights Act,* 27 ARIZ. ST. L.J. 1301, 1313 (1995). Accordingly, most courts have placed the onus of providing a discrimination-free workplace on the employer. *See id.* at 1305, 1312–13. The power to eradicate workplace discrimination is in the employer.

¶ 13. Limiting liability to respondeat superior when an agent of an employer violates the ADA is consistent with effectuating the purpose of the ADA, but it would not further the underlying policies of WIS. ADMIN. CODE ch. ATCP 110, namely, protecting consumers in the home improvement arena from unfair and deceptive trade practices. As we noted above, the DATCP promulgated ch. ATCP 110 pursuant to WIS. STAT. § 100.20(2), which allows the DATCP to issue general orders forbidding unfair trade practices. Section 100.20, entitled, "Methods of competition and trade practices," was a consumer protection measure designed to prevent unfair competition and trade practices. *See* § 100.20(1); Amy Algiers Anderson, Comment, *State Deceptive Trade Practices and Consumer Protection Acts: Should Wisconsin Lawyers be Susceptible to Liability Under Section 100.20?,* 83 MARQ. L. REV. 497, 511–12 (1999).

¶ 14. Unlike personnel decisions, which involve purely internal business practices, the home improvement industry involves individuals interacting with people on the outside. Many of these contacts and negotiations occur out in the field and in the customer's home. Where the individual's employer has not instructed him or her to engage in improper conduct, the employer has little opportunity to exercise direct oversight of its agents to prevent such conduct. On the other hand, the individual clearly *does* possess the power to ensure fair dealing and practices. Allowing a corporate

agent to use the corporate form to shield malfeasance of his or her own design inadequately deters such practices.[6] In *Jackson v. DeWitt*, 224 Wis. 2d 877, 887, 592 N.W.2d 262 (Ct. App. 1999), we stated, "public policy dictates that consumer protection statutes and administrative rules must be read in pari materia to achieve the goal of providing protection and remedies to consumers." Accordingly, we construe "and their officers, representatives, agents and employees," *see* WIS. ADMIN CODE § ATCP 110.01(5), to have its plain meaning: *all* of the named individuals and entities are potential sources of the unfair methods of dealing that WIS. STAT. § 100.20 meant to stamp out. To the extent individuals have the power to prevent unfair dealings with consumers, individuals will incur liability for noncompliance.[7]

---

[6] This inadequacy is even more apparent in cases where the employer is an insolvent corporation. In such cases "[t]o permit an agent of a corporation . . . to inflict wrong and injuries upon others, and then shield himself [or herself] from liability behind his [or her] vicarious character, would often both sanction and encourage the perpetration of flagrant and wanton injuries by agents of insolvent and irresponsible corporations." *See Hoang v. Arbess*, 80 P.3d 863, 867 (Colo. Ct. App. 2003) (citation omitted) (holding that the Colorado Consumer Protection Act allowed suit against agents as individuals), *cert. denied*, 2003 Colo. LEXIS 954 (No. 03SC338) (Colo. Dec. 1, 2003). Significantly, the Reeveses represent to this court that Reeves Custom Builders, Inc. has filed for bankruptcy.

[7] Our holding finds further support in *FTC v. Amy Travel Service, Inc.*, 875 F.2d 564 (7th Cir. 1989). The Wisconsin Legislature modeled WIS. STAT. § 100.20 after § 5 of the Federal Trade Commission Act of 1914, currently codified at 15 U.S.C. § 45. *See* Amy Algiers Anderson, Comment, *State Deceptive Trade Practices and Consumer Protection Acts: Should Wisconsin Lawyers be Susceptible to Liability Under Section 100.20?*, 83 MARQ. L. REV. 497, 512, 512 n.132 (1999). *Compare*

¶ 15.    We briefly deal with three additional contentions the Reeveses present. First, we reject their assertion that imposing liability on mere employees is absurd simply because they are "lowest on the chain of command and least likely to have any input on the operations of the corporation." Our holding does not subject the janitor who mops the office floor to personal liability. We hold individuals liable as sellers only when they commit violations of their own volition and design; we do not hold them vicariously liable for all vices imputable to the corporate entity.

¶ 16.    Second, we disagree that *Alberte* decides this case on the basis that, as in that case, "the remedial structure of ATCP 110 indicates that the [legislating authority] did not intend to create personal liability for corporate representatives." The Reeveses rely on WIS. ADMIN. CODE § ATCP 110.07(2)(a)-(d), which list such remedies as cancellation of the contract, return of all payments the seller has not expended yet on the improvements, and delivery of unused materials to the home improvement site. They wholly ignore subsec. (5), which makes clear that the remedies in this section are neither exclusive nor a prerequisite to or a limitation on any other remedies. Further, WIS. ADMIN. CODE ch. ATCP 110 note reads, "A person who suffers a monetary loss because of a violation of this chapter may sue the violator directly under [WIS. STAT. § 100.20(5)] and may recover twice the amount of the loss, together with

§ 100.20(1) *with* 15 U.S.C. § 45(a)(1) (language substantively identical). In *Amy Travel Service, Inc.*, the Seventh Circuit held that individuals could be held liable once the Federal Trade Commission established corporate liability for violations of § 45 if the FTC could further prove that the individual was involved personally in the improper conduct or had the authority to control it. *Amy Travel Service, Inc.*, 875 F.2d at 566, 570, 573.

costs and reasonable attorneys' fees." We see no inherent inconsistency with individual liability.

■■■

¶ 17.   Third, the Reeveses contend that because the statute does not say in so many words that it intends to allow piercing of the corporate veil that the DATCP had no authority to do so through its definition of "seller" in WIS. ADMIN. CODE § ATCP 110.01(5). We disagree. As we stated above, holding individual wrongdoers accountable is *necessary* in order to adequately effectuate the purpose behind WIS. STAT. § 100.20, protecting consumers from unfair dealings. We will not read § 100.20(2) to hand the DATCP an empty mandate. When we construe a statute, we aim to discern and give effect to the legislature's intent. *Novak v. Madison Motel Assocs.*, 188 Wis. 2d 407, 414, 525 N.W.2d 123 (Ct. App. 1994). We presume the legislature intended a construction that advances rather than defeats its purpose. *Id.* Where the corporate veil frustrates the purpose of a statute, we must assume the legislature intended to pierce it.

■■■

¶ 18.   Having decided that individuals may be held individually accountable for violations of WIS. ADMIN. CODE ch. ATCP 110, we now consider whether the circuit court properly denied the Reeveses' motion for summary judgment. We review independently a motion for summary judgment, employing the same well-known methodology the circuit court employs. *See Green Spring Farms v. Kersten*, 136 Wis. 2d 304, 314–17, 401 N.W.2d 816 (1987); *Lambrecht v. Estate of Kaczmarczyk*, 2001 WI 25, ¶¶ 20–24, 241 Wis. 2d 804, 623 N.W.2d 751. Summary judgment is proper when no genuine issues of material fact exist and the moving

party is entitled to judgment as a matter of law. *Green Spring Farms*, 136 Wis. 2d at 315.

¶ 19.  We hold that the circuit court properly refused to dismiss Arthur from the action but that it should have granted the motion with respect to Beth. The plaintiffs allege that Arthur was their contact person throughout their dealings. He signed the contract, and all negotiations regarding the contract were with him. Thus, whether the contract was with Arthur in his individual capacity or whether he negotiated and performed under the contract as an agent of Reeves Custom Builders, Inc., the Rayners may hale him into court to answer their charges that he violated WIS. ADMIN. CODE ch. ATCP 110. As the president of the corporation, he clearly was not merely an underling taking orders from a superior. Any corporate decision to act as he did originated with *him*.

¶ 20.  The pleadings are insufficient as to Beth, however. The Rayners have not pleaded any facts that would indicate she either perpetrated any of the WIS. ADMIN. CODE ch. ATCP 110 violations or had the power to prevent or rectify them. The record only reveals that at the relevant time, her role included typing certain documents and doing some of the corporation's book-work. At the time of Arthur's deposition, she also answered and recorded phone calls and did some administrative paperwork. Even if true, these facts do not establish liability. It is not enough that she is merely a "shareholder, officer, director, and employee."

¶ 21.  We dismiss Beth from the action, but we affirm the circuit court's order insofar as it refused to grant summary judgment in favor of Arthur. If the Rayners' allegations with respect to the WIS. ADMIN.

CODE ch. ATCP 110 violations turn out to be true, Arthur is accountable for them whether he contracted in his own individual capacity as Arthur J. Reeves or as an agent of Reeves Custom Builders, Inc. Shielding him from liability for perpetrating or permitting such violations in either capacity frustrates the purposes of the law.

*By the Court.*—Order affirmed in part and reversed in part.