Robert STUART and Lin Farquhar-Stuart,
Plaintiffs-Appellants-Cross-Respondents,

v.

WEISFLOG'S SHOWROOM GALLERY, INC.
and Ronald R. Weisflog,
Defendants-Respondents-Cross-Appellants,†

AMERICAN FAMILY MUTUAL INSURANCE CO.,
Defendant-Respondent.†

Court of Appeals

*No. 2005AP886. Submitted on briefs February 17, 2006.
—Decided May 3, 2006.*

2006 WI App 109

(Also reported in 721 N.W.2d 127.)

† Petition to review granted 12-6-06.

668

669

 ▌

On behalf of the plaintiffs-appellants-cross-respondents, the cause was submitted on the briefs of *Roy E. Wagner* and *Matthew R. Jelenchick*, of *Niebler, Pyzyk, Klaver & Wagner, L.L.P.*, of Menomonee Falls.

On behalf of the defendants-respondents-cross-appellants, the cause was submitted on the brief of *James C. Ratzel* and *Joya J. Santarelli*, of *Ratzel and Associates, L.L.C.*, of Brookfield.

On behalf of the defendant-respondent American Family Mutual Insurance Company, a brief was filed by *Paul J. Pytlik* and *Michelle M. Stoeck*, of *Hills Legal Group, Ltd.*, of Waukesha.

Before Snyder, P.J., Brown and Nettesheim, JJ.

¶ 1. NETTESHEIM, J. We address a novel question in this case and hold that WIS. STAT. § 100.20(5) (2003–04)[1] authorizes doubling of an entire damage award when a violation of the Home Improvement Practices Act, WIS. ADMIN. CODE ch. ATCP 110 (Oct. 2004)[2] (ATCP 110), is coupled with additional wrongdoing, separate and apart from the § 100.20/ATCP 110 violation, which contributes to the loss.

---

[1] All references to the Wisconsin Statutes are to the 2003–04 version unless otherwise noted.

[2] All references to the Wisconsin Administrative Code are to the October 2004 version unless otherwise noted.

677

¶ 2. A jury found that Weisflog's Showroom Gallery, Inc., (the Gallery) induced Robert Stuart and his wife, Lin Farquhar-Stuart, to enter into an architectural contract and a subsequent remodeling contract by false, deceptive or misleading trade practices contrary to Wis. ADMIN. CODE ATCP § 110.02. The jury further found that the Gallery had negligently performed the construction called for in the remodeling contract. The jury awarded the Stuarts $95,000 and apportioned 25% to the ATCP 110 misrepresentations and 75% to the negligence. Postverdict, the trial court doubled only the misrepresentation damages and, fashioning a formula derived from that logic, awarded attorney fees of $15,675, well short of the $200,000 in fees the Stuarts had sought. The Stuarts appeal the trial court's inclusion of the damage apportionment question on the special verdict and the court's refusal to submit a question as to Ronald Weisflog's personal liability. The Stuarts also appeal the attorney fee award.

¶ 3. Weisflog and the Gallery[3] cross-appeal. They claim that the Stuarts' action was barred by the statute of limitations governing contract actions and otherwise was barred by the economic loss doctrine. They also challenge several evidentiary rulings of the trial court and the structure of the special verdict. Finally, Weisflog contends that he was a "prevailing party" and should have been awarded costs.

¶ 4. We affirm the judgment as it relates to the cross-appeal. We hold that the action is not time-barred, as the Stuarts' claims are statutory and tort based, not contract-based. We also hold that the economic loss doctrine does not apply because the core agreement between the parties was one for services within the

---

[3] Hereinafter, when Weisflog and the Gallery take a unified position, we will refer to them as "the Weisflog parties."

678

meaning of *Insurance Co. of North America v. Cease Electric Inc.*, 2004 WI 139, 276 Wis. 2d 361, 688 N.W.2d 462. Finally, we do not address the remaining cross-appeal issues because the Weisflog parties have failed to support their arguments with necessary cites to the record and have otherwise conceded the issues by failing to respond in their reply brief to the Stuarts' arguments in their cross-respondent's brief.

¶ 5. However, as to the issues the Stuarts raise on appeal, we reverse. We hold that the apportionment of damages between the Gallery's ATCP 110 violations and its negligence was error and that pursuant to WIS. STAT. § 100.20, the Stuarts are entitled to twice the full measure of their damages. We remand for the entry of judgment to reflect the doubling of the damages. From that, it follows that we must also reverse the attorney fees award since the award was based, at least in part, on the apportionment of the damages. We remand for a redetermination of the Stuarts' attorney fees.

¶ 6. In addition, under *Rayner v. Reeves Custom Builders, Inc.*, 2004 WI App 231, 277 Wis. 2d 535, 691 N.W.2d 705, *review denied*, 2005 WI 60, 281 Wis. 2d 114, 697 N.W.2d 472, we hold that the trial court erred in excluding from the verdict a question as to Weisflog's personal liability. We remand for a retrial of that limited question.

### FACTS[4]

¶ 7. Weisflog is a home builder/remodeler. In 1995, the Stuarts met with Weisflog to discuss the

---

[4] The Stuarts' brief prompts a reminder to counsel that the fact section should objectively recite the historical and procedural facts; it is no place for argument. *See Arents v. ANR Pipeline Co.*, 2005 WI App 61, ¶ 5 n.2, 281 Wis. 2d 173, 696 N.W.2d 194, *review denied*, 2005 WI 136, 285 Wis. 2d 626, 703 N.W.2d 376.

design and construction of a sizeable addition to their existing home in the City of Brookfield. Weisflog testified that for an architectural fee of $1000, he would consult with the Stuarts about their remodeling needs and provide them with finalized drawings and a home design. However, Weisflog also testified that he had no degree in architecture, nor a license or registration to that effect with the state, and did not recall whether he had had any licensed architect review the plans. Weisflog's son, Robert, was the project manager. Robert also is not degreed or licensed in architecture.

¶ 8. Following these consultations, the Stuarts entered into a "Remodeling Architectural Contract" (Architectural Contract) in November 1995 with the Gallery for the design and drawings of the addition. Weisflog was listed as the salesperson. The Architectural Contract required the Stuarts to pay a $1000 "remodeling architectural fee." The drawings provided by Weisflog to the Stuarts state, "Drawn by Ronald and Robert Weisflog." Neither Weisflog nor anyone working for the Gallery was a licensed architect. The plans list as the provider "Weisflog's Showroom Gallery," but do not include "Inc." or any corporate reference.

¶ 9. With the Architectural Contract in place, the Stuarts then entered into a second contract in May 1996 designated the "Remodeling Contract." The contract price totaled approximately $278,000. The Remodeling Contract generally laid out the work to be done, with many items listed as being "per plan." Drafted on stationery bearing the logo "Weisflog Homes Specialty Drywalling & Repairs," it made no reference to the Gallery or any corporate entity. The contract was signed by Robert Weisflog. The parties dispute whether Weisflog himself was present at the signing. According to the Stuarts, Weisflog professed familiarity with local

code requirements and assured the Stuarts that the home would be built in compliance with them. The jury heard testimony from Weisflog, however, that he was unfamiliar with certain aspects of the code and from Robert Weisflog that he "[didn't] even know that there's a Brookfield code . . . . I don't think there is such a thing."

¶ 10. In due course, the Gallery constructed and completed the addition to the Stuart residence. Sometime in 2001, Robert Stuart was in the new hot tub room when his foot went through a soft spot in the floor. He pulled back the carpeting, exposing a "rotted hole." Further investigation revealed that the room's windowsills also were warping and rotting. The Stuarts engaged a professional engineer/home inspector whose examination revealed numerous other serious construction defects and building code violations, some unobservable before that because of their location in the attic or other inaccessible places.

¶ 11. The Stuarts then commenced this action against Weisflog personally and the Gallery, alleging negligence in the design and construction of the addition to their home.[5] The Stuarts later amended their complaint to allege breach of contract and ATCP 110 violations against the Weisflog parties.

¶ 12. Twice Weisflog unsuccessfully moved for partial summary judgment seeking dismissal of the claims against him in his individual capacity. The second summary judgment motion also requested dismissal of the contract claims against the Weisflog

[5] The Stuarts' complaint also named American Family Insurance, Weisflog's and the Gallery's liability insurer, as a defendant.

parties. An interlocutory petition to the court of appeals seeking review similarly failed.

¶ 13. At the outset of the jury trial, the Stuarts dismissed their breach of contract claims and proceeded on the remaining theories of negligence and the ATCP 110 misrepresentations. The Stuarts' witnesses included a licensed architect who testified that the architectural plans were deficient, incomplete and did not follow the applicable building codes. The architect's report stated that the plans showed that "major areas of construction are missing or devoid of detail . . . . [and] [t]he plans are deficient in many other respects based on accepted standard architectural practices."

¶ 14. The Stuarts also introduced the inspection report prepared by their engineer/home inspector. This report detailed various examples of the work not being completed per the plans and specifications, as well as numerous code violations such as improper ventilation; venting of the clothes dryer into the attic; lack of access to the attic and to mechanical, electrical and plumbing items; improper clearance to floor joists; and improper surface drainage. The Weisflog parties' defense expert later agreed with the inspector's conclusion that the damage was so significant that demolishing and rebuilding the hot tub room would be more prudent than repairing it.

¶ 15. The Stuarts also presented the testimony of a certified indoor environmentalist who stated that he found mold growing in a number of locations, some in "very high concentrations," and some of it of the type Stachybotrys, commonly known as "toxic mold." The remediation of this condition called for physical removal of the mold, cleaning the contaminated surfaces and purifying the air at a cost of between approximately

$7500 and $9500. Demolition and rebuilding the project was projected to cost $96,300.

¶ 16. Following the close of the evidence, the trial court and the parties addressed the form of the special verdict. The Stuarts sought to include questions pertaining to Weisflog's alleged personal liability, but the court rejected the request. In addition, over the Stuarts' objections, the court included a question requested by the Weisflog parties which asked the jury to apportion the damages between any negligence and any ATCP 110 misrepresentations committed by the Gallery.

¶ 17. The jury found that the Gallery was negligent in both the design and construction of the project. It also found that the Gallery had engaged in false, deceptive or misleading representations to induce the Stuarts to enter into both the Architectural Contract and the Remodeling Contract. The jury awarded damages in the amount of $95,000 and, pursuant to the directions in the special verdict, apportioned 25% of the damages to the Gallery's ATCP 110 misrepresentations and 75% to the Gallery's negligence.

¶ 18. Postverdict, the trial court fashioned an attorney fee award formula based partly on the apportionment, ordered double damages for that portion of the damages attributable to misrepresentation, awarded costs to the Stuarts in the amount of $19,683, and denied the remainder of the parties' numerous motions after verdict. This appeal and cross-appeal followed.

## CROSS-APPEAL ISSUES

### 1. Statute of Limitations

¶ 19. We address the cross-appeal first because some of the issues could be dispositive. The Weisflog

parties have consistently maintained that, at its heart, this case is a claim for breach of contract. Based on this premise, the Weisflog parties contend that they were entitled to partial summary judgment because the Stuarts' ATCP 110 claims were time barred by the statute of limitations applicable to contract actions.[6] They reason that the Stuarts' ATCP 110 claims do not exist independently of the Architectural Contract and the Remodeling Contract, and that the damages are contract-based because "the ATCP code merely adds penalty provisions to what is already a breach of contract action."

¶ 20. Determining the appropriate statute of limitations is, in essence, a question of statutory construction and subject to de novo review. *See Krahenbuhl v. Wis. Dentistry Examining Bd.*, 2004 WI App 147, ¶ 19, 275 Wis. 2d 626, 685 N.W.2d 591. Our review of a trial court's summary judgment decision also is de novo because we apply the same methodology as the trial court. *Van Erden v. Sobczak*, 2004 WI App 40, ¶ 8, 271 Wis. 2d 163, 677 N.W.2d 718. Summary judgment must be granted if the evidence demonstrates no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. *Id.*, ¶ 9; WIS. STAT. § 802.08(2). Summary judgment methodology is well established and need not be repeated here. *See, e.g., Lambrecht v. Estate of Kaczmarczyk*, 2001 WI 25, ¶¶ 20–24, 241 Wis. 2d 804, 623 N.W.2d 751.

¶ 21. The trial court rejected the Weisflog parties' statute of limitations claim on two grounds: (1) a disputed issue of material fact existed as to when the

---

[6] The Weisflog parties' motions for summary judgment did not challenge the Stuarts' negligence claims.

work was completed and (2) not all of the Stuart's claims were contract-based. We need not address the first portion of this ruling since the Stuarts' voluntarily dismissed the breach of contract claims at the outset of the jury trial.

■

¶ 22. That leaves us with the second portion of the court's ruling—that the ATCP 110 claims were not contract-based. As noted, the Weisflog parties contend that the ATCP code merely adds penalty provisions to an existing breach of contract claim. From this premise, they argue that the limitations period should be measured from the date of the breach of the contract. *See CLL Assocs. Ltd. P'ship v. Arrowhead Pacific Corp.*, 174 Wis. 2d 604, 609, 497 N.W.2d 115 (1993). The Stuarts respond that their ATCP 110 claims are based on statutory and administrative code provisions, and, as such, stand independent of any potential breach of contract claims. Given the "tort flavor" of a ATCP 110 misrepresentation claim, the Stuarts argue that the limitations period should be measured under the discovery rule applicable to tort actions. *See CLL Assocs.*, 174 Wis. 2d at 609. In addition, they contend that the discovery rule applicable to tort actions should apply because violations of ATCP 110 constitute a basis for imposing civil liability. *See, e.g., McGarrity v. Welch Plumbing Co.*, 104 Wis. 2d 414, 418, 312 N.W.2d 37 (1981) (stating that the violation of a legislative or quasi-legislative enactment is negligence per se). "[W]hen the legislature or an administrative agency prescribes what particular acts shall or shall not be done, the statute or rule may be interpreted as establishing a standard of care, 'deviation from which constitutes negligence.' " *Id.* (citation omitted).

¶ 23. Wisconsin case law has articulated a framework for analyzing whether a given statutory rule violation provides a basis for imposing civil liability. *See Taft v. Derricks*, 2000 WI App 103, ¶¶ 2, 12, 235 Wis. 2d 22, 613 N.W.2d 190. Negligence per se will be found to exist if all three of these questions are answered affirmatively: (1) Was the harm inflicted the type the statute was designed to prevent, (2) was the person injured within the class of persons sought to be protected, and (3) is there some expression of legislative intent that the statute become a basis for the imposition of civil liability. *See Antwaun A. v. Heritage Mut. Ins. Co.*, 228 Wis. 2d 44, 66–67, 596 N.W.2d 456 (1999).[7]

¶ 24. WISCONSIN ADMIN. CODE ch. ATCP 110 is entitled "Home Improvement Practices," and was adopted under authority of WIS. STAT. § 100.20, the fair trade practices statute. The note set prominently at the beginning of ch. ATCP 110 reads:

> This chapter is adopted under authority of s. 100.20(2), Stats., and is administered by the Wisconsin department of agriculture, trade and consumer protection. Violations of this chapter may be prosecuted under s. 100.20(6), 100.26(3) or (6), Stats. A person who suffers

---

[7] We acknowledge that in *Taft v. Derricks*, 2000 WI App 103, ¶¶ 2, 12, 235 Wis. 2d 22, 613 N.W.2d 190, and *Antwaun A. v. Heritage Mutual Insurance Co.*, 228 Wis. 2d 44, 66–67, 596 N.W.2d 456 (1999), the appellate courts addressed whether the statutes and ordinances at issue in those cases offered a basis for imposing civil liability as to the plaintiffs' negligence claims, whereas here we are concerned with the Stuarts' misrepresentation claims under ATCP 110. However, both claims are tort based. We therefore deem the analysis set forth in *Taft* and *Antwaun* applicable to the misrepresentation claims in this case.

a monetary loss because of a violation of this chapter may sue the violator directly under s. 100.20(5), Stats., and may recover twice the amount of the loss, together with costs and reasonable attorneys' fees.

■

¶ 25. Wisconsin courts have discussed on several occasions the policies that underlie WIS. STAT. § 100.20(5). *See, e.g., Shands v. Castrovinci*, 115 Wis. 2d 352, 358, 340 N.W.2d 506 (1983), and *Benkoski v. Flood*, 2001 WI App 84, ¶ 17, 242 Wis. 2d 652, 626 N.W.2d 851. The awarding of double damages and attorney fees encourages those injured by unfair trade practices that violate the administrative regulations to bring forward their causes of action. *Benkoski*, 242 Wis. 2d 652, ¶ 17. Statutory remedies also encourage individuals to act as private attorneys general in enforcing their individual rights, with the aggregate effect of these individual actions working to enforce the public's rights. *Id.* Private actions augment enforcement of the administrative regulations by the Department of Justice, which has insufficient resources to prosecute all violations. *Id.* The statutory remedies deter conduct that violates administrative regulations because they subject the violator to double damages, attorney fees and costs. *Id.*

■

¶ 26. Here, the jury agreed with the Stuarts' assertion that they were the victims of false, deceptive and misleading representations that induced them to enter into both the Architectural Contract and the Remodeling Contract. The Gallery misrepresented that the Stuarts were purchasing quality architectural services, when in fact no architectural entity prepared or reviewed the plans, and that the drawings were done according to all applicable codes, when that, too, proved

false.[8] This harm is the very type that ATCP 110 was designed to prevent. The Stuarts, as owners of a home to which a home improvement contract pertained, were within the class of persons that WIS. STAT. § 100.20(5) and ATCP 110 seek to protect, and there is a clearly expressed legislative intent that the statute provides a basis for the imposition of civil liability. These factors, coupled with the public policy underpinning both the statute and the administrative rule, convince us that violations of these provisions constitute a basis for the imposition of civil liability separate and apart from any breach of contract. As such, the discovery rule covering tort claims applies in this case.

¶ 27. The discovery rule applies for all tort actions other than those already governed by a legislatively created discovery rule. *Hansen v. A.H. Robins Co.*, 113 Wis. 2d 550, 560, 335 N.W.2d 578 (1983). Such claims accrue on the date the injury is discovered or with reasonable diligence should have been discovered, whichever occurs first. *Id.* The Stuarts discovered the rot in 2001, and filed suit in 2003, well within the six years prescribed by WIS. STAT. § 893.52. The Stuarts' ATCP 110 claims were not time barred.

---

[8] We appreciate that the jury found in a separate question that the Gallery did not misrepresent "that they were licensed architects." This answer apparently adopts Weisflog's testimony that he did not expressly represent to the Stuarts that he was a licensed architect. However, this answer does not eliminate the fact that Weisflog represented to the Stuarts that he or the Gallery would provide architectural plans and that such would conform to all applicable building codes. The jury's finding that the Gallery falsely induced the Stuarts to enter into the Architectural Contract is presumably based, at least in part, on this evidence.

## 2. Economic Loss Doctrine

¶ 28. The Weisflog parties attack the judgment from another, but still contract-based, angle. They assert that the Stuarts' claims are barred by the economic loss doctrine (ELD) because all claims arise out of the parties' contracts. They also contend that the Remodeling Contract was a contract for the sale of a product, not services, and therefore falls within the ELD. We disagree because we deem the Architectural Contract the pivotal and controlling agreement, and one that clearly was a contract for services and therefore not governed by the ELD.

¶ 29. The ELD is a judicially created doctrine that seeks to preserve the distinction between contract and tort. *Daanen & Janssen, Inc. v. Cedarapids, Inc.*, 216 Wis. 2d 395, 403–04, 573 N.W.2d 842 (1998). Basic to the doctrine is the understanding that, in the commercial arena, contract law is better suited than is tort law for dealing with damages that are purely economic. *Id.* Economic damages are those arising because the product does not perform as expected, including damage to the product itself or monetary losses caused by the product. *Linden v. Cascade Stone Co.*, 2005 WI 113, ¶ 6, 283 Wis. 2d 606, 699 N.W.2d 189. Ascertaining whether the contract here is one for products or services, and applying the ELD to a set of facts both present questions of law subject to our independent review. *Cease Elec.*, 276 Wis. 2d 361, ¶¶ 14, 15.

¶ 30. The Weisflog parties argue that we should discern the nature of the contract via the "predominant purpose test." *Linden*, 283 Wis. 2d 606, ¶¶ 18–25. This test assesses whether, based on the totality of the circumstances, a mixed contract is mainly for goods or

689

for services. *Id.*, ¶¶ 8, 22. We disagree with this approach under the facts of this case.

¶ 31. The jury found that the Gallery induced the Stuarts through misrepresentations to enter into the Architectural Contract. True, a substantial amount of physical product was generated by the remodeling project pursuant to the Remodeling Contract. But the Architectural Contract, the parties' core—and initial— agreement, was one for design and architectural services. Without that threshold agreement, the Remodeling Contract would never have followed. As such, the Remodeling Contract was a trailer agreement, implementing the drawings and plans contemplated by the Architectural Contract. Indeed, aside from a $1500 incentive in the form of a discount on the building price,[9] the Stuarts were in no way bound to sign the Remodeling Contract with the Weisflog parties.

¶ 32. Because we view the Architectural Contract as the one driving the project, we need not engage in a mixed contract analysis. An architectural contract is one for services, *see Cease Elec.*, 276 Wis. 2d 361, ¶ 49, and our supreme court recently enunciated the "bright

---

[9] The Architecture Contract provided, in part:

We, Robert Stuart and Linda Farquhar-Stuart hereby agree to pay in full the remodeling architectural fee of $1,000.00 above and beyond our down payment of $500.00 . . . following the approved, finalized drawings of our home design . . . . We understand that this remodeling architectural fee will be applied toward the construction costs of the remodeling project, after we sign a contract with Weisflog's Showroom Gallery, Inc., accepting this corporation as the remodelers of our future project.

The Stuarts claim the $1500 never was applied toward the construction costs. At trial, they suggested that that was why the Remodeling Contract was signed on "Specialty Drywalling & Repairs" stationery.

690

line rule" that the ELD "is inapplicable to claims for the negligent provision of services." *Id.*, ¶ 52.

¶ 33. Finally, but importantly, we recall what we have already said regarding the public policy that underpins Wis. Stat. § 100.20 and ATCP 110. These provisions encourage victims of improper home improvement projects to bring forward their causes of action as private attorneys general with the aggregate effect of enforcing the public's rights. *Benkoski*, 242 Wis. 2d 652, ¶ 17. Public policy dictates that consumer protection statutes and administrative rules be read in pari materia to achieve the goal of providing protection and remedies to consumers. *Rayner*, 277 Wis. 2d 535, ¶ 14. Section 100.20, together with ATCP 110, give no indication that the legislature intended to simply add a remedy to common law misrepresentation claims or breach of contract claims. *See Kailin v. Armstrong*, 2002 WI App 70, ¶ 40, 252 Wis. 2d 676, 643 N.W.2d 132 (discussing Wis. Stat. § 100.18 as a distinct cause of action); *see also Orion Flight Servs., Inc. v. Basler Flight Serv.*, 2004 WI App 222, ¶ 25, 277 Wis. 2d 819, 692 N.W.2d 804, *affirmed,* 2006 WI 51, 290 Wis.2d 421, 714 N.W.2d 130 (stating that all of Wis. Stat. ch. 100 must be read as a whole).

¶ 34. To apply the ELD to properly pled and proven ATCP 110 claims would defeat the public purpose underpinning Wis. Stat. § 100.20 and the remedies provided therein.

### 3. Evidentiary rulings and verdict structure

¶ 35. The Weisflog parties next complain that the trial court erred by admitting certain damage evidence so prejudicial that it "poisoned the jury." They also

691

criticize the court for not allowing the defense of contributory negligence to be included on the special verdict, citing to *Lutz v. Shelby Mutual Insurance Co.,* 70 Wis. 2d 743, 751, 235 N.W.2d 426 (1975), for the proposition that it is error for a court to "refuse" to instruct on an issue raised by the evidence.

¶ 36. We decline to address these arguments on the merits for two reasons. First, the Weisflog parties do not direct us to those portions of the record where they objected to the allegedly prejudicial evidence or requested a contributory negligence instruction. Nor do they cite to those portions of the record where the trial court made the challenged rulings in response to such objection or request. Launching an argument unsupported by appropriate citations to the record violates WIS. STAT. RULE 809.19(1)(d) and (e). Moreover, this was a six-day trial, and the appellate record comprises nearly two thousand pages. We have no obligation either to forage through a voluminous record for facts supporting a party's contention or to consider an inadequately presented argument. *Grothe v. Valley Coatings, Inc.,* 2000 WI App 240, ¶ 6, 239 Wis. 2d 406, 620 N.W.2d 463; *see also* WIS. STAT. RULE 809.83(2).

¶ 37. Second, the coup de grace is that, in the face of the Stuarts' responses to these arguments, which provides new and relevant information, the Weisflog parties' reply brief is conspicuously silent on these issues. An argument asserted by the respondent and not disputed by the appellant in the reply brief is taken as admitted.[10] *Fischer v. Wis. Patients Comp. Fund,* 2002 WI App 192, ¶ 1 n.1, 256 Wis. 2d 848, 650 N.W.2d 75.

---

[10] We are not holding that the absence of a reply brief automatically permits the invocation of this rule. To the con-

## 4. Denial of Costs to Weisflog

¶ 38. The final issue on the cross-appeal is whether the trial court properly denied costs to Weisflog personally. Weisflog contends that because the jury "exonerated" him from personal responsibility, he is a prevailing defendant entitled to costs under WIS. STAT. § 814.03.[11] Section 814.03 provides, in relevant part:

> **814.03 Costs to defendant. (1)** If the plaintiff is not entitled to costs under s. 814.01 (1) or (3), the defendant shall be allowed costs to be computed on the basis of the demands of the complaint.
>
> **(2)** Where there are several defendants who are not united in interest and who make separate defenses by separate answers, if the plaintiff recovers against some but not all of such defendants, the court may award costs to any defendant who has judgment in the defendant's favor.

Construction of a statute is a question of law subject to our de novo review. *Hughes v. Chrysler Motors Corp.*, 197 Wis. 2d 973, 978, 542 N.W.2d 148 (1996).

---

trary, we see many cases where a reply brief is unnecessary. Rather, we limit the application of this rule to those instances when the respondent's brief introduces new and relevant information not addressed in the appellant's brief-in-chief and which bears on the resolution of the issue. That is the situation in this case. The cross-respondent's brief filed by the Stuarts recites new and relevant information on the issue and the Weisflog parties have failed to respond.

[11] This argument is based on the jury's answer to Question 9 of the special verdict stating that the Remodeling Agreement was between the Stuarts and the Gallery, not Weisflog.

¶ 39. Weisflog first argues that under WIS. STAT. § 814.03(1), the Stuarts are not entitled to costs with regard to their claims against him. We disagree. The jury found in favor of the Stuarts, entitling them to costs under WIS. STAT. § 814.01(1) ("Except as otherwise provided in this chapter, costs shall be allowed of course to the plaintiff upon a recovery."). Thus, § 814.03(1) is out of play.

¶ 40. Weisflog also asserts that he is entitled to costs under WIS. STAT. § 814.03(2). He argues that not only were his and the Gallery's interests in this lawsuit "clearly distinct," but his interests actually were adverse to his corporation's because an award against him individually would come out of his own pocket. We disagree that the Weisflog parties' interests are not united. As our recital of the facts reveals, the Weisflog parties created the proverbial "moving target" by repeatedly interchanging their individual and corporate roles in their dealings with the Stuarts, even introducing a third entity, Weisflog Homes Specialty Drywalling & Repairs, in the Remodeling Contract. Moreover, subsec. (2) imposes a second requirement besides disunity of interest. The defendants also must have "ma[d]e separate defenses by separate answers." Section 814.03(2). The Weisflog parties did not do so. Finally, we again take note that the Weisflog parties have failed to respond to the Stuarts' arguments on this issue in their cross-reply brief, thereby once more conceding the point. *See Fischer*, 256 Wis. 2d 848, ¶ 1 n.1.

¶ 41. We reject the Weisflog parties' cross-appeal and affirm the portions of the judgment related to the cross-appeal issues.

694

## APPEAL ISSUES

¶ 42. We now address the Stuarts' appeal. All of the appeal issues relate to Wis. Stat. § 100.20(2) and ATCP 110. We therefore begin with some general observations regarding these enactments. Section 100.20(2) authorizes the Wisconsin Department of Agriculture, Trade and Consumer Protection (DATCP) to issue general orders forbidding trade practices determined by the department to be unfair. These "general orders" took shape as ATCP 110 rules regulating home improvement contractors. Section 100.20(5) creates a private cause of action for any violation of ATCP 110, and provides for recovery of twice the amount of the loss, together with costs and reasonable attorney fees. Finally, we again recall the public policy principles that we have already addressed regarding these enactments.

### 1. Apportionment of Damages

¶ 43. The jury determined that the Gallery made a "false, deceptive or misleading representation" to induce the Stuarts to enter into both the Architectural Contract and the Remodeling Contract and that those improper representations were a cause of the Stuarts' damage. Special Verdict Question 16B asked the jury to apportion the damages between negligence and misrepresentation. The jury determined that 75% of the $95,000 damages was due to negligence and 25% to misrepresentation. The Stuarts maintain that the trial court erred in submitting the apportionment question because it frustrates the public policy behind Wis. Stat. § 100.20 and ATCP 110. We agree.[12]

---

[12] We therefore need not address the Stuarts' further contentions that the apportionment question runs afoul of the law

695

¶ 44. A trial court has wide discretion in framing special verdict questions, provided the verdict adequately covers the law applicable to the case. *Vogel v. Grant-Lafayette Elec. Coop.*, 201 Wis. 2d 416, 422, 548 N.W.2d 829 (1996). We conclude that Question 16B is not consistent with the law and so represents an erroneous exercise of discretion.

¶ 45. Administrative rules and regulations are construed in the same manner as statutes. *Baierl v. McTaggart*, 2001 WI 107, ¶ 21, 245 Wis. 2d 632, 629 N.W.2d 277. We must faithfully give effect to legislative enactments by determining the statute's meaning, primarily through its language, which we assume expresses the legislature's intent. *State ex rel. Kalal v. Circuit Court for Dane County*, 2004 WI 58, ¶ 44, 271 Wis. 2d 633, 681 N.W.2d 110. We favor a construction that fulfills the intent of the statute or regulation over one that defeats its manifest object. *Shands*, 115 Wis. 2d at 356.

¶ 46. Wisconsin stat. § 100.20(5) provides:

> 100.20 Methods of competition and trade practices.
>
> . . . .
>
> **(5)** *Any person* suffering pecuniary loss because of a violation by any other person of any order issued under this section *may sue* for damages therefore in any court of competent jurisdiction and *shall recover twice the amount of such pecuniary loss,* together with costs, including a reasonable attorney's fee. (Emphasis added.)

---

of indivisible harm and that the question conflicts with the jury's further answer that the Gallery was negligent in the design of the remodeling project.

¶ 47. The statute plainly envisions both a private action for those injured by dishonest home improvement contractors and a definite remedy. The statute is silent, however, as to whether the doubling of damages applies to the entire amount of the pecuniary loss where other conduct by the contractor, not covered by the statute or the administrative code, contributes to the loss. We must keep in mind, however, that "remedial statutes should be liberally construed to suppress the mischief and advance the remedy that the statute intended to afford." *Benkoski*, 242 Wis. 2d 652, ¶ 8. Where multiple interpretations are possible, we must ascertain the underlying intent from the language in relation to the subject matter, history and the object intended to be accomplished. *Baierl*, 245 Wis. 2d 632, ¶ 21.

¶ 48. Trade practices are subject to extensive regulation in Wisconsin. Unscrupulous business tactics cause financial distress both to consumers and to legitimate businesspeople, because money taken by the unethical merchant is money taken from the honest one. James D. Jeffries, *Protection for Consumers Against Unfair and Deceptive Business,* 57 MARQ. L. REV. 559, 559 (1974). To address this concern, Wisconsin enacted consumer protection laws such as WIS. STAT. § 100.20; the DATCP in turn promulgated ATCP 110. This court has recognized that the remedies foster the policies underlying the law and rules. As we have already explained, double damages and attorney fees help dispel the reluctance of parties injured by unfair trade practices to bring forward their causes of action and help deter similar and future contractor malfeasance, with the aggregate effect of working to the public good. *See*

*Benkoski,* 242 Wis. 2d 652, ¶ 17. Jeffries explained that the monetary remedy to injured parties

> reflects a legislative concern for the considerable financial harm that can result from unfair or deceptive selling schemes as well as an awareness that traditional public and private remedies are often of little value in deterring consumer fraud. The restitution remedy is designed both to assure that the merchant[s are] deprived of the illegal fruits of [their] past deceptive practices and to deter illegal conduct in the future by eliminating the merchant[s'] expectation that [they] can profit from such activities.

*Jeffries, supra,* at 599.

¶ 49. These policy statements dovetail with our reading of the statutory language. Taking them together, we glean a clear intent to encourage private actions and to assess meaningful penalties so as to punish the particular wrongdoer and deter future offenders. We see no place in this framework for apportioning damages where, as here, the damages flowed from the initial misrepresentation. Had the Gallery not made its misrepresentations inducing the contracts, the Stuarts may well have not entered into the contracts in the first instance and thereby avoided the harm. In short, the misrepresentations were the catalyst for the harm. To superimpose on the statute a requirement not expressed by the legislature would run counter to the undisputed purposes of the law.[13]

---

[13] By analogy, the reasoning of the court in *Baierl v. McTaggart,* 2001 WI 107, 245 Wis. 2d 632, 629 N.W.2d 277, supports our conclusion. There the supreme court held that an entire lease was unenforceable because of one provision that violated Wis. Admin. Code § ATCP 134.08, also adopted pursuant

¶ 50. Accordingly, based on the statute's unqualified statement that injured parties "shall recover" twice their loss, and further based on the policies that were the genesis for that language, we conclude that the verdict question asking the jurors to apportion damages was error. The full award should have been doubled. We reverse this portion of the judgment and remand with directions that the full award be doubled.

## 2. Attorney Fees

¶ 51. The Stuarts next contend that the trial court erred by awarding only $15,675 in attorney fees when it found largely reasonable the documentation of the $200,000 sought. They contend the court did not correctly apply the "lodestar methodology," the approach Wisconsin has adopted for determining the reasonableness of attorney fees.[14] *Kolupar v. Wilde Pontiac Cadillac, Inc.*, 2004 WI 112, ¶¶ 28–29, 275 Wis. 2d 1, 683 N.W.2d 58; *Anderson v. MSI Preferred Ins. Co.*, 2005 WI 62, ¶ 39, 281 Wis. 2d 66, 697 N.W.2d 73.

---

to WIS. STAT. § 100.20. *Baierl*, 245 Wis. 2d 632, ¶ 40. The court said that mere severance of the offending clause not only would fail to advance the policy goals of § ATCP 134.08, but would undermine them entirely. *Baierl*, 245 Wis. 2d 632, ¶ 33. Private actions are an important adjunct to the justice department's efforts, and if severance were the only penalty, consumers would be intimidated about bringing actions and future unfair trade practices would not be deterred. *Id.*, ¶¶ 35–36.

[14] The use of "lodestar" in this context seems to have originated in *Lindy Bros. Builders, Inc. of Philadelphia v. American Radiator & Standard Sanitary Corp.*, 487 F.2d 161, 168 (3rd Cir. 1973), which observed that "the amount thus found to constitute reasonable compensation should be the lodestar of the court's fee determination." *See Kolupar v. Wilde Pontiac Cadillac, Inc.*, 2004 WI 112, ¶ 28, 275 Wis. 2d 1, 683 N.W.2d 58.

¶ 52. The amount of an attorney fee award is left to the discretion of the trial court. *Kolupar*, 275 Wis. 2d 1, ¶ 22. Generally, we uphold the trial court's determination unless the court erroneously exercised its discretion, giving deference to the trial court's greater familiarity with local billing norms and its opportunity to have witnessed first-hand the quality of the representation. *Id.* We do not substitute our judgment but examine the court's explanation to determine if it employed a logical rationale based on the appropriate legal principles and facts of record. *Id.*

¶ 53. As a starting point with the lodestar approach, the trial court first must multiply the number of hours reasonably expended on the litigation by a reasonable hourly rate. *Anderson*, 281 Wis. 2d 66, ¶ 39. The court then may make upward or downward adjustments based on any factors in SCR 20:1.5(a) (2005)[15] that in the court's discretion are relevant. *Anderson*, 281 Wis. 2d 66, ¶ 39.

---

[15] SCR 20:1.5 provides in relevant part:

(a) A lawyer's fee shall be reasonable. The factors to be considered in determining the reasonableness of a fee include the following:

(1) the time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly;

(2) the likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer;

(3) the fee customarily charged in the locality for similar legal services;

(4) the amount involved and the results obtained;

(5) the time limitations imposed by the client or by the circumstances;

¶ 54. In support of their attorney fee claim, the Stuarts provided a thirty-page billing summary. The trial court observed that "what it boils down to is, under [WIS. STAT. § 100.20(5)], are over $200,000 in attorney fees reasonable." The court found that: the Stuarts' lead attorney provided "excellent," well-prepared representation; both Stuart attorneys' hourly charges were reasonable; two plaintiff attorneys were necessary; and even where isolated itemized charges seemed "rather high," without further information the court would be guessing as to their reasonableness. The court concluded that to properly assess whether the $200,000 legal bill was reasonable, it would have to hold a hearing, the time and expense of which it deemed unreasonable. The court then considered numerous other options, describing in detail its rationale for rejecting each one, and for ultimately settling on the method it determined was most reasonable. While we conclude that the court's final choice must be revisited, we do appreciate the care the court took to make a thorough record.

¶ 55. Ultimately, the trial court concluded that the most reasonable approach was one based on the jury's apportionment of the damages between the ATCP

(6) the nature and length of the professional relationship with the client;

(7) the experience, reputation, and ability of the lawyer or lawyers performing the services; and

(8) whether the fee is fixed or contingent.

The factors in SCR 20:1.5(a)(1), (3), and (7) essentially are subsumed in the determination of a reasonable number of hours and a reasonable hourly rate. *See Lynch v. Crossroads Counseling Ctr., Inc.*, 2004 WI App 114, ¶ 40, 275 Wis. 2d 171, 684 N.W.2d 141.

110 violation and negligence. Thus, the court took the 25% of the $95,000 award apportioned to the ATCP 110 violation ($23,750), doubled that amount ($47,500), and then took one-third of that to reflect the customary plaintiff attorney fee ($15,675). The court also stated that the 75% negligence apportionment meant that three-fourths of the damage award, or $71,250, "is between the plaintiffs and their·attorney. Whether they end up at an hourly rate or a one-third of that is not an issue for this Court to decide."

¶ 56. We reverse the trial court's ruling on a number of grounds. First, the court erred by looking for a way to reduce the amount simply because it deemed $200,000 in fees too high on a $95,000 damage case. Disparity between the amount of damages and requested attorney fees alone does not mean the fees are unreasonable. In Wis. STAT. § 100.20(5) cases, an award of attorney fees may well exceed the amount of double damages to encourage attorneys to undertake such cases. *See Pierce v. Norwick,* 202 Wis. 2d 587, 598, 550 N.W.2d 451 (Ct. App.1996) (section 100.20(5) case involving Wis. ADMIN. CODE § 134.06 violation); *cf. Benkoski,* 242 Wis. 2d 652, ¶¶ 2, 4 (section 100.20(5) case in which damage and attorney fee awards of approximately $10,000 and $51,000, respectively, were left undisturbed).

¶ 57. Second, the trial court used the apportioned damages as a premise for the attorney fee calculation, a methodology we have already rejected in the preceding discussion regarding the calculation of damages under Wis. STAT. § 100.20(5). Third, the court observed that a hearing on the issue of attorney fees would require additional time and expenses to the parties. We know of

702

no authority that precludes a hearing on requested attorney fees on this basis. We remand for a redetermination of the Stuarts' attorney fees.

### 3. Special Verdict Question Regarding Weisflog's Personal Liability

¶ 58. The Stuarts argue that the trial court improperly excluded a verdict question inquiring as to Weisflog's potential personal liability. The Weisflog parties counter that the jury verdict concluding that the Remodeling Contract was with the Gallery, not Weisflog, merits vast deference. While we agree with this statement, we disagree that it controls the question.

¶ 59. Instead, *Rayner*, released shortly after the Stuart-Weisflog trial ended, controls this issue. There, homeowners brought an action against a corporate home remodeling contractor and the president and an officer of the corporation, alleging ATCP 110 violations and breach of contract. *Rayner*, 277 Wis. 2d 535, ¶¶ 4–6. As in the case at bar, the signature page of the contract in *Rayner* contained no reference to any corporate entity or to the signer's official capacity as corporate president. *Id.*, ¶ 4. The corporation's president and officer unsuccessfully sought to be dismissed personally from the action. *Id.*, ¶¶ 7, 9. We upheld this ruling, holding that WIS. ADMIN. CODE § ATCP 110.01(5)[16] provides for liability for individual wrongdoers. *Rayner*, 277 Wis. 2d 535, ¶ 11. The court explained that consumer protection statutes and admin-

---

[16] WIS. ADMIN. CODE § ATCP 110.01(5) provides: " 'Seller' means a person engaged in the business of making or selling home improvements and includes corporations, partnerships, associations and any other form of business organization or entity, and their officers, representatives, agents and employees."

istrative rules must be read together to achieve the goal of providing protection and remedies to consumers:

> Accordingly, we construe "and their officers, representatives, agents and employees," *see* Wis. Admin. Code § ATCP 110.01(5), to have its plain meaning: *all* of the named individuals and entities are potential sources of the unfair methods of dealing that Wis. Stat. § 100.20 meant to stamp out. To the extent individuals have the power to prevent unfair dealings with consumers, individuals will incur liability for noncompliance.

*Rayner*, 277 Wis. 2d 535, ¶ 14 (footnote omitted).

¶ 60. The *Rayner* court rejected the arguments that the legislating authority did not intend to create personal liability for corporate representatives and that the DATCP had no authority to do so. *Id.*, ¶¶ 16–17. The court reasoned that holding individual wrongdoers accountable is necessary to adequately accomplish the purpose behind Wis. Stat. § 100.20. "We will not read § 100.20(2) to hand the DATCP an empty mandate . . . . Where the corporate veil frustrates the purpose of a statute, we must assume the legislature intended to pierce it." *Rayner*, 277 Wis. 2d 535, ¶ 17.

¶ 61. Weisflog argues that he cannot be held personally liable because the parties all testified that they thought the Remodeling Contract was made with the Gallery, not Weisflog personally, and the jury concurred. This argument sidesteps the import of the Architectural Contract, which came first. The Architectural Contract was induced by the misrepresentations as to the Gallery's architectural capabilities, the quality of plans that would be produced and the Weisflog parties' knowledge of building code requirements. That Weisflog deems the Gallery to be the contracting party is immaterial under *Rayner*. In addition, an individual is

personally responsible for his or her own tortious conduct. *Oxmans' Erwin Meat Co. v. Blacketer,* 86 Wis. 2d 683, 692, 273 N.W.2d 285 (1979). If the tortfeasor is shown to have been acting for the corporation, the corporation also may be liable, but the individual is not thereby relieved of his or her own responsibility. *Id.* As *Rayner* teaches, the corporate veil may be pierced to allow personal liability against individual wrongdoers "if it is shown that the individual—rather than the entity—is responsible for devising the unfair method of selling home improvements." *Rayner,* 277 Wis. 2d 535, ¶ 1.

¶ 62. Unfortunately, the trial court did not have the benefit of *Rayner* when the special verdict was being fashioned. To its credit, however, the court recognized the significance of *Rayner,* commenting at the hearing on motions after verdict that it harbored "great concerns" about the correctness of its ruling in view of *Rayner.* Nonetheless, the court declined to grant a new trial on that issue. Given *Rayner,* we are compelled to reverse and remand for a trial on the narrow and limited question of Weisflog's personal liability as to the Stuarts' ATCP 110 claims.

## CONCLUSION

¶ 63. We affirm the judgment as it relates to the cross-appeal. We hold that the action is not time-barred, that the ELD does not apply, and that the Weisflog parties' remaining issues are either waived by failing to provide cites to the record or conceded by failing to respond in their cross-reply brief to the Stuarts' arguments.

¶ 64. We reverse the judgment as to the issues the Stuarts raise on appeal. We remand with directions that the full damages award be doubled and for a redeter-

mination of attorney fees. We further direct a trial on the limited question of Weisflog's alleged personal liability on the Stuarts' ATCP 110 claims.[17]

¶ 65. Costs are awarded to the Stuarts.

*By the Court.*—Judgment affirmed in part; reversed in part and cause remanded with directions; orders affirmed.

[17] The trial is limited to the question of Weisflog's personal liability, since the damages have already been determined.